UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT CLARK (#611786)** | **CIVIL ACTION** |
| **VERSUS** | |
| **JAMES LeBLANC, ET AL.** | **NO. 17-0111-BAJ-EWD** |

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 13, 2018.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT CLARK (#611786)                                    CIVIL ACTION

VERSUS

JAMES LeBLANC, ET AL.                                     NO. 17-0111-BAJ-EWD

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Defendants' Motions to Dismiss (R. Docs. 12 and 16) and Motion for Summary Judgment (R. Doc. 23). These Motions are opposed.

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, commenced this proceeding pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Dr. Mathew Gamble, Dr. Randy Lavespere, Warden Darrel Vannoy, Kristen Thomas, Bradly LaCombe, Lt. Col. Rheams, Lt. Jones, Ass't Warden Shirley Coody, Major Rosso, Cynthia Park, and unidentified "Jane Doe" and "John Doe" personnel at LSP, complaining that Plaintiff suffers with gender dysphoria and that Defendants have violated Plaintiff's constitutional rights by exhibiting deliberate indifference to Plaintiff's serious medical needs, specifically by failing to properly treat Plaintiff's condition and/or provide appropriate accommodation therefor. Plaintiff further asserts that Defendants have interfered with Plaintiff's access to the courts by failing to properly address Plaintiff's administrative grievances, have threatened retaliation in response to Plaintiff's complaints, and have failed to properly investigate claims of sexual assault and harassment.

Addressing first Defendants' Motion for Summary Judgment, Defendants contend, relying upon the pleadings, a Statement of Uncontested Material Facts, and certified copies of Plaintiff's administrative remedy proceedings, that dismissal is appropriate in the first instance based upon

the procedural argument that Plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility

of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In Plaintiff's Complaint, Plaintiff alleges that Plaintiff first arrived at LSP in February 2014 and, during initial screening, informed prison officials that Plaintiff is a male-to-female transgender person who suffers with manic depression. Notwithstanding, prison officials have refused to allow Plaintiff to express a feminine persona. Plaintiff has continued to attempt to alter Plaintiff's appearance and express a feminine personality, through the arching of Plaintiff's eyebrows, the growing out of Plaintiff's hair and fingernails, the use of home-made cosmetics, the making of more effeminate clothing, the insistence upon use of a feminine name, *etc.*, many of which attempts are in violation of prison rules. Plaintiff alleges that Plaintiff has been verbally harassed and told by security officer that Plaintiff is a man and will be treated as such. Plaintiff complains that Plaintiff has been subjected to verbal abuse, threats and sexual harassment by both security officers and inmates alike. Although Plaintiff acknowledges that Plaintiff has been prescribed medication to address feelings of anxiety and depression, Plaintiff has nonetheless made suicide attempts in December 2015 and January 2017. Although Plaintiff has consulted on numerous occasions with the LSP Mental Health Director, Dr. Gamble, and other mental health care workers at LSP, Plaintiff alleges that Plaintiff "continues to struggle mentally with her appearance as a male as well as others whom constantly try to defeminize her." *See* R. Doc. 1 at p. 8. Plaintiff further complains that Plaintiff has been generally denied bodily privacy and, during a 2-week period in August 2016, was observed on camera in Plaintiff's dormitory shower area and was ultimately issued a disciplinary charge for having "consensual" sex in the shower with a co-inmate. Plaintiff also asserts that Plaintiff was subjected to an attempted rape on one occasion in November 2016 that was not properly investigated and that resulted in another

disciplinary charge issued against Plaintiff. Plaintiff seeks to be provided with hormone replacement therapy and electrolysis, to be allowed to dress as a woman and purchase cosmetics and feminine underclothing, to be provided with appropriate therapeutic classes to help alleviate Plaintiff's symptoms, and generally to be treated in accordance with the "standards of care" advocated by the World Professional Association for Transgender Health. Notwithstanding, Defendants have denied Plaintiff's requests in this regard and have failed to institute policies appropriate to addressing the needs of inmates with gender identity disorders.

In response to Plaintiff's allegations, as noted above, Defendants contend that Plaintiff has failed to exhaust available administrative remedies as mandated by 42 U.S.C. § 1997e. Pursuant to this statute, Plaintiff was required to exhaust administrative remedies available at the prison prior to commencing a civil action in this Court with respect to prison conditions.[1] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Specifically, not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525.

---

1    42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted." (Emphasis added).

Thus, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Applying the foregoing standard, and upon a review of Plaintiff's pertinent administrative remedy proceedings, the Court finds that Defendants' motion is well-founded. Specifically, it appears that on or about August 21, 2016, Plaintiff submitted an administrative grievance to prison officials wherein Plaintiff complained that while confined in Eagle Dormitory at LSP for a two week period, between August 1 and August 15, 2016, Plaintiff's privacy rights were violated because the shower and toilet area in the dormitory were equipped with video cameras that allowed security officers to observe the area. *See* R. Doc. 14 at p. 62. In addition, Plaintiff complained therein that on August 15, 2016, Plaintiff engaged in consensual sex with a co-inmate and was observed by three officers and a co-inmate in the video viewing room. According to Plaintiff, these actions violated Plaintiff's constitutional rights, and Plaintiff complained that Plaintiff has been harassed and verbally assaulted as a result thereof.

The above-referenced grievance was accepted by prison officials on September 2, 2016 and assigned the number LSP-2016-2369. Before any response could be provided to this grievance, however, Plaintiff admittedly signed a form that withdrew the grievance on September 15, 2016. *See id.* at p. 60. As a result, the grievance was never processed or addressed by prison officials. Plaintiff contends, however, that the withdrawal of the grievance was not in fact voluntary and that Plaintiff executed the form only because Defendant Rheams came to Plaintiff on that date and threatened bodily harm to Plaintiff if Plaintiff did not withdraw the grievance. *See* R. Doc. 1 at p. 15. Plaintiff asserts that several days after signing the "voluntary" withdrawal, Plaintiff sought advice from security officers and spoke to Defendant Coody who advised Plaintiff to re-submit the referenced grievance. Plaintiff asserts that Plaintiff did in fact re-submit the

referenced grievance on September 27, 2016.  *See id*.  Notwithstanding, there is no record of the re-submitted grievance ever having been received or addressed by prison officials at either the first or second step of the prison administrative process.

In addition to the foregoing, Plaintiff asserts that Plaintiff submitted a second "emergency" grievance to prison officials on August 23, 2016 that generally complained that Plaintiff was not receiving appropriate medical attention for Plaintiff's gender dysphoria, including hormone treatments, the ability to express an effeminate personality, and "classes, groups, and other therapeutic avenues to alleviate [gender dysphoria]."  *See* R. Doc. 26-1 at p. 8.  Notwithstanding, there is also no record of this grievance ever having been received or addressed by prison officials.  Although Plaintiff allegedly wrote to several prison officials, including Defendant Thomas on August 28, 2016, *see id*. at p. 11, and Defendant Coody on September 27, 2016, *see id*. at p. 13, complaining about the alleged mis-handling of this and the former grievance, it does not appear that either grievance was finalized or exhausted in accordance with prison policy.

Finally, Plaintiff contends that on October 11, 2016, Plaintiff wrote a letter to the "Chief of Opperations [sic]" of the Louisiana Department of Public Safety and Corrections.  *See id*. at p. 16.  In this correspondence, Plaintiff asserted that Plaintiff was on that date submitting two new grievances to the Warden at LSP,[2] one complaining again about "voyerism [sic]" and one complaining "of not getting a response to a [grievance] after filing an emergency [grievance] … on Aug. 23, 2016."  Plaintiff has not provided the Court with copies of these purported "new" grievances, nor are copies thereof attached to the referenced correspondence to the Chief of Operations that is included in the record.

---

2    Plaintiff clearly states in the Complaint that the two grievances that Plaintiff forwarded to the Chief of Operations on October 11, 2016 were "new" grievances.  *See* R. Doc. 1 at p. 16.

Based on the foregoing, the Court finds that Plaintiff has not exhausted available administrative remedies in connection with the claims asserted herein. In this regard, the Louisiana Department of Public Safety and Corrections has implemented a two-step administrative process that involves the submission of an initial grievance to the warden's office at the inmate's facility. *See* 22 La. ADC, Part I, § 325. The administrative rules further provide that an inmate who is confronted with a matter of sufficient seriousness may bypass the normal administrative procedure and may file a grievance as one addressing a "problem of an emergency nature." *See* 22 La. ADC, Part I, § 325(H). Such an emergency grievance is submitted directly to the shift supervisor instead of to the warden's office as with a normal grievance. In either instance, upon receipt, prison officials then have a 40-day period (reduced to 5 days in connection with a Prison Rape Elimination Act claim) during which, absent a requested extension or absent placement of the grievance on administrative backlog (because of other grievances still pending), they are obligated to provide a written response to the grievance. *See* 22 La. Admin. Code, Part I, § 325(J)(1)(a). If the inmate is not satisfied with the First Step Response, the inmate has five days within which to submit a Second Step appeal to the office of the Secretary of the Department, after which the Secretary's office has an additional 45 days from "receipt" of the inmate's appeal to file a final Second Step response thereto. *See* 22 La. Admin. Code, Part I, § 325(J)(1)(b). As pertinent to the instant case, the administrative rules specifically provide that, upon passage of the time allowed for a response at any step of the administrative process, the inmate may proceed unilaterally to the next step thereof. *See* 22 La. Admin. Code, Part I, § 325(J)(1)(c).

In the instant case, accepting Plaintiff's assertions as true, Plaintiff submitted two administrative grievances to prison officials, one on August 21, 2016 (which was re-submitted on September 27, 2016) complaining of being observed in the dormitory showers for a 15-day period,

and one on August 23, 2016, complaining that Plaintiff was not receiving appropriate medical attention for gender dysphoria. Although Plaintiff complains that Plaintiff was coerced into initially withdrawing the first grievance upon threat of bodily harm, Plaintiff asserts that Plaintiff resubmitted same after being advised to do so. As to neither grievance, however, did Plaintiff proceed unilaterally to the second step of the administrative process by appealing the grievance to the office of the Secretary of the Department after the passage of the applicable time period for a response at the First Step. Thus, neither grievance was administratively exhausted, specifically because "a prisoner must pursue a grievance through both steps for it to be considered exhausted." *See Johnson v. Johnson, supra*, 385 F.3d at 515, *citing Wright v. Hollingsworth*, 260 F.3d 358, 358 (5th Cir. 2001). Whereas Plaintiff may wish for the Court to interpret Plaintiff's correspondence of October 11, 2016 to be an "appeal" of the two prior grievances to the Secretary, the Court is unwilling to accept such an interpretation. The referenced correspondence makes no suggestion that it is an attempt to appeal the prior grievances and, instead, appears to have as its principal purpose the transmission of copies of the two new grievances to the Secretary's office, including a request that Plaintiff not be retaliated against therefor. Accordingly, the Court concludes that this proceeding is subject to dismissal for failure to exhaust available administrative remedies.

In addition to the foregoing, and in the alternative, the Court notes that were it to address Defendants' pending Motions to Dismiss, it would likely find that Defendants' contentions are, for the most part, meritorious. In this regard, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is directed to dismiss a Complaint when that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court addressed the standard of

pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

Defendants assert in this case, in response to Plaintiff's allegations, that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that they have participated in a clear violation of Plaintiff's constitutional rights, of which they were or should have been aware. The Court finds that this assertion of the defense of qualified immunity compels the dismissal of most, if not all, of Plaintiff's claims asserted herein.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Undertaking the qualified immunity analysis, the Court concludes that the arguments raised in Defendants' Motions to Dismiss are generally meritorious. In this regard, In order for an inmate to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff has received the treatment or accommodation that Plaintiff believes should have been provided is not the issue because a prisoner's mere disagreement with medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin*, 641 Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell, supra*, 463 F.3d at 346, *quoting Farmer v. Brennan, supra*, 511 U.S. at 847. The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell*, 467 F.3d

459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing standard and evaluating Plaintiff's claims without the benefit of an evidentiary showing, it does not appear that Defendants have been deliberately indifferent to Plaintiff's complaints. It appears from Plaintiff's allegations that Plaintiff has in fact been diagnosed with gender dysphoria by the prison mental health director, Dr. Gamble, *see* R. Doc. 1 at p. 17, that Plaintiff has been prescribed medication in an attempt to relieve Plaintiff's symptoms of psychological stress and depression, that Plaintiff has been provided with accommodation in the form of permission to shower in private, and that Plaintiff has been seen and evaluated by Dr. Gamble and by other physicians and mental health care providers at LSP on multiple occasions. Further, with regard to Plaintiff's request for hormone therapy and as noted by the Court in denying Plaintiff's previous motion for injunctive relief, "there currently is no controlling precedent in the Fifth Circuit as to whether refusing hormone therapy to a person, diagnosed with gender dysphoria, violates the Eighth Amendment prohibition against cruel and unusual punishment." *See* R. Doc. 22, *quoting Young v. Adams*, 693 F. Supp. 2d 635 (W.D. Tex. 2010). In fact, the courts that have addressed this issue in this Circuit have generally rejected the claims of inmate plaintiffs under the facts presented in those cases. *See Praylor v. TDCJ*, 430 F.3d 1208, 1209 (5th Cir. 2005) (assuming without deciding that transsexualism presents a serious medical need but holding, on the record before it, that "the refusal to provide hormone therapy did not constitute the requisite deliberate indifference"); *Young v. Adams, supra* (dismissing an inmate-plaintiff's request for hormone therapy for failure to state a claim upon which relief may be granted); *Young v. University of Texas Medical Branch Correctional Health Care*, 2012 WL 262983 (E.D. Tex. Jan. 11, 2012); *Sears v. Newcomer*, 2012 WL 3198580 (W.D. La. June 29, 2012) (dismissing an inmate-plaintiff's request for a transfer to a facility that could provide treatment for transsexualism); *Scribner v.*

*Surapaneni*, 2006 WL 3761976 (E.D. Tex. Dec. 21, 2006) (dismissing an inmate-plaintiff's request for hormone therapy on motion for summary judgment).[3]   The Court in *Praylor v. TDCJ*, *supra*, in finding that no deliberate indifference was shown *in that case*, appeared to suggest that under certain facts the provision of hormone therapy may be warranted.  Notwithstanding, Plaintiff's allegations do not suggest that Plaintiff would be able to meet the requisite burden of

---

3   As noted in *Young v. Adams, supra,* which recognized that the Fifth Circuit had not definitively addressed the issue:

> The appellate courts that have considered the issue have uniformly recognized gender dysphoria as a serious medical condition.  *See De'Lonta v. Angelone*, 330 F.3d 630 (4th Cir. 2003); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Allard v. Gomez*, 9 Fed. Appx. 793, 794 (9th Cir. 2001); *Brown v. Zavaras*, 63 F.3d 967, 970 (10th Cir. 1995); *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987).  Not a single decision, however, mandates hormone therapy.  The manner of treatment is within the discretion of the prison.  *Maggert v. Hanks*, 131 F.3d 670, 671 (7th Cir. 1997); *Brown*, 63 F.3d at 970; *White*, 849 F.2d at 327-28; *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).  In limited circumstances, a Plaintiff may be entitled to hormone therapy in some jurisdictions.  *South v. Gomez*, 211 F.3d 1275 (9th Cir. 2000) (approving district court decision that an inmate was entitled to hormone therapy when all experts conceded that Plaintiff (1) had gender dysphoria and (2) had already been taking hormone therapy prior to incarceration); *Phillips v. Michigan Dep't of Corrections*, 731 F. Supp. 792 (W.D. Mich. 1990), *aff'd*, 932 F.2d 969 (6th Cir. 1991) (termination of hormone therapy not appropriate where inmate had been previously diagnosed with gender dysphoria by a medical professional and was being treated with hormone therapy upon incarceration).  The Seventh Circuit has suggested that an inmate might not be eligible for any curative treatment for gender dysphoria, if such treatment is cost prohibitive.  *Maggert*, 131 F.3d at 672.

*Id*. at 640-41.  Of significance in the above-referenced decisions was the issue whether the inmate plaintiff had been diagnosed with gender dysphoria and had been prescribed hormone therapy prior to incarceration.  In the instant case, in contrast, Plaintiff makes no such allegation.  Whereas Plaintiff alleges that Plaintiff was confined in the Texas prison system for 15 years prior to Plaintiff's incarceration in Louisiana, Plaintiff makes no assertion that Plaintiff was diagnosed with gender dysphoria or prescribed hormone therapy by Texas officials.  The most that Plaintiff asserts is that, upon release from confinement in Texas, Plaintiff began using "black market hormone treatments," but this assertion is conclusory, and Plaintiff does not assert that such treatments were ever medically prescribed.  *See* R. Doc. 3-1 at p. 4.

proof in establishing in this case that such relief is warranted, and the jurisprudence in this Circuit post-*Praylor,* as noted above, supports this conclusion. *See Scribner v. Surapaneni, supra* (wherein evidence was adduced on motion for summary judgment that even a diagnosis of gender dysphoria does not necessarily mandate hormone therapy and that a health care provider must "weigh the anticipated benefit of the treatment against the potential risk[s]," which are not inconsequential). In the instant case, as pointed out by Defendants, Plaintiff was incarcerated in the State of Texas for fifteen years prior to being incarcerated in Louisiana, and there is no suggestion in the record that Plaintiff was diagnosed with gender dysphoria or prescribed hormone therapy within that prison system prior to Plaintiff's arrival at LSP.[4] Moreover, Defendants assert that Plaintiff was confined at LSP for more than two years before Plaintiff first formally complained about not receiving hormone treatment through the filing of an administrative grievance. In short, it does not appear from a review of Plaintiff's allegations that Defendants have ignored or disregarded Plaintiff's complaints, and in the context of a qualified immunity analysis, it does not appear that Plaintiff's rights are sufficiently clearly established to support a finding of liability.

Notwithstanding the foregoing, the Court is reluctant to reach a definitive determination in connection with Plaintiff's claims in the absence of an evidentiary showing relative to the medical care and attention that Plaintiff has received, relative to the accommodations that have been or should be provided because of Plaintiff's condition, or relative to whether policies have been or should be implemented to address the concerns of an inmate suffering with gender identity

---

4    By reference to the jurisprudence cited above, it appears that the Texas correctional system has implemented a formal policy or policies that address the issue of inmates suffering with gender identity issues. *See, e.g., Young v. Adams, supra*.

concerns. While the Court recognizes the security concerns that would likely accompany any allowance for Plaintiff to dress like a woman, wear female undergarments, utilize cosmetics, grow his hair and fingernails longer than currently allowed for male inmates, shave Plaintiff's body hair, or generally appear as a woman in an all-male prison facility, the Court does not have the expertise to determine whether other accommodations may be appropriate that would afford Plaintiff some measure of relief without imposing an unreasonable burden upon prison resources or security concerns. *Cf., Young v. University of Texas Medical branch Correctional Health Care, supra* (where the court directed prison officials to prepare and submit a "special report … in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978)" and *Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997)). In addition, the Court is mindful that qualified immunity is not an available defense in the context of a request for injunctive relief. *See Netherland v. City of Zachary, Louisiana*, 2008 WL 11350293, *2 (M.D. La. Sept. 10, 2008), *citing Yates v. Stalder*, 217 F.3d 332, 333 n. 2 (5th Cir. 2000).

## RECOMMENDATION

It is recommended that Defendants' Motions for Summary Judgment (R. Doc. 23) be granted, dismissing the Plaintiff's claims, without prejudice, because of Plaintiff's failure to exhaust available administrative remedies as mandated by 42 U.S.C. § 1997e. It is further recommended that Defendants' Motions to Dismiss (R. Docs. 12 and 16) be denied as moot and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 13, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**